The next case is Leslie v. Starbucks Corporation. Good morning and may it please the court. David Bem for the appellant. And I'm reserving three minutes for rebuttal. In 2021, Starbucks employees in and around Buffalo exercised their statutory right to stand together and choose union representation. Starbucks responded with an onslaught of anti-union activity. Starbucks deployed corporate managers into area stores and began a series of unlawful tactics to nip the union organizing in the bud. Starbucks engaged in surveillance, more strict enforcement of rules, and the so-called hallmark violations of firing union supporters, closing facilities, and promising benefits to display support for the union. This is a narrower question that we're dealing with, right? I'm sorry? This is a narrower question. We're not really ruling on the efficacy of the decisions that have been made about unfair labor practices. We're looking here at whether the district judge abused his discretion in ordering discovery. That's correct. And that's, it's a bit troublesome to me only because of the union's view, at least its outset kind of flat view, that I'm sorry, you don't get any discovery here, period. Now, I think later on, there were discussions that indicated that there was a lot of, there was a lot of debate back and forth, and the district judge actually struck some of the, struck some of the subpoenas and disallowed some of the discovery, quashed, I think, 15 of them. And so there was a debate going on there. And so I think the crux of the case sort of narrows down to whether the district judge's ruling, which prevented some discovery was an abuse of discretion. I think that's, and I'm sorry, and also there's, in this case, there's also an alternative point, which is to the extent to which the district judge is bound by what the agency is doing in terms of a guess action. If I can respond to that last point. Okay, why don't you do that. The agency's position is not that the court, the agency's position is not that the court was bound by that decision in the ALJ and the guess proceeding. Why did it institute the guess proceeding? It didn't indicate that there were any unfair labor practices associated with the subpoenas until the district court denied its blanket request to have no discovery at all. If my colleague wouldn't mind, I just want to make sure for contextual purposes that I understand it's not just the discovery order, it's the dismissal for failure to comply with discovery. Is that right? That's correct, your honor. So then please turn to my colleague's question. Not as a sanction, but I'm talking about now the efficacy of the particular ruling by the district judge in light of the guess proceeding. If I can just address the reasons for the guess proceeding because Starbucks in their brief, I think mischaracterized this as the director initiating the proceedings. The board cannot initiate its own proceedings. It can only act on the charge of a private person. So here under the board's regulations, when a charge is filed, the director is required to investigate the charge. And if there is an apparent violation to pursue that through litigating an unfair labor practice case. You're standing here to say there was no connection between the board and the... I'm sorry, I'm not hearing you so well. Maybe the microphone is... Can you repeat the last thing you said? You're saying that there was no connection at all between the board and the general counsel in initiating the guess proceeding? I'm saying that the proceeding can only proceed on the basis of a charge filing by the private party and the private party made the independent decision to do that and we were not part of that decision. That's correct. Well, but the guess proceeding was initiated and there was a proceeding before the ALJ. My understanding was that the general counsel was involved in that. Well, the general counsel pursuant to the National Labor Relations Act has the prosecutorial discretion to, upon finding an apparent violation to pursue that before the board and that is the normal course. It would be unusual for the... It looks to me like this was a reaction to the decision by the district judge to grant certain discovery and an effort to alter that decision by bringing this action. With respect, I would say that it was an action to enforce the law. The fact that the charging parties filed the charge after the district court issued his decision. And then the general counsel picked up on that charge and pressed it, right? If there's an apparent violation, that's the normal course of things. But it wasn't done in order to influence the district judge's decision. Is that your position? That's my position. It was done to effectuate the statutory policies of the National Labor Relations Act. I thought when you ran back to the district judge on motions for reconsideration at virtually every stage of that, when the complaint was filed, when the decision was made and so forth and there were these motions for reconsideration. It sounds to me like you're oppressing the district judge to alter its position based upon what was happening here. And yet you're saying it wasn't done for that reason. That's correct. There are two independent issues. There's the issue of whether these subpoenas were permissible under the federal rules. We contend that they were not. They were overbroad under any discovery standard, but particularly under the good cause discovery standard that applies in a preliminary injunction proceedings. They didn't recognize the size and resources available to the parties under Rule 45 and that they would fail under any discovery standard. But also the statutory rights of the employees were adversely affected by the subpoenas. So as a litigant in the case, the director made that argument to the court. That's not inconsistent with her role. You singled out one of the discovery requests as possibly constituting an unfair labor practice or as constituting an unfair labor practice, right? I'm sorry, say again. One of the requests was singled out as, your honor, this could be an unfair labor practice, correct? I believe that point was made early on in the proceedings. With regard to one of the requests, but not the rest of them. I mean, I think, I guess I'm a little, I'm concerned about whether the district court gets sandbagged here a little bit. Maybe there were things the board, I mean, the agency could have represented to the district court when it's fashioning its discovery. Well, you should know, your honor, that this looks like this could be itself interfering with the organizing process. I would say at the very outset, the director's papers indicated that these were highly coercive, not just with respect to a single request, but overall. So I don't think that there was a situation where the district court was caught unawares here. Well, I think you might argue, you might say that the district judge wasn't fully steeped in labor law and what unfair labor practices are and the organizing issues that occur and how they're protected, communications, et cetera, et cetera. But part of the lawyer's job is to educate the district judge. If the district judge was marching down a path of creating unfair labor practices or condoning unfair labor practices in an order, you would have thought that that would have been front and center of the discussions on discovery. And yet, they weren't. I mean, I think those concerns, and if I may, I think those concerns were presented to the judge, both generally and in certain cases with more specific detail. I would also say that, I think the position you've taken here is that the district judge was anti-union and was just hell-bent to destroy, to let Starbucks get away with its unfair labor practices, blah, blah, blah. I mean, I don't, well, you asked to have the district judge removed from the case because the judge made rulings that were antithetical to what your position was, but, I don't see this as a case between Starbucks and the NLRB. I see this as a case between Starbucks and the district judge and whether the district judge was abusing his authority in some way in making the decisions he made because the normal procedure would be to, I would think, if you don't agree with the district judge, you don't comply, and then you're held in contempt, and then there's a ruling, and then it comes up here. Well, and that didn't happen here. I would say that the non-parties are the sole parties in control of whether or not they comply. The director doesn't exercise any control over them. The director has no authority over them, and to the extent that the district judge suggested we should apply- Granted, the non-parties are separate, but whether the union is, or the NLRB is giving them permission to take the position that they're taking is another question, or encouraging them to take the position that they're taking is another question. Well, could I ask, as to the discovery requests, which reached across the nation in terms of communications, and subpoenas served on the employees, which also reached, potentially, to cover all kinds of communications between Starbucks employees anywhere in the nation, I understood that that potential problem with guests, with employee confidentiality, and union relations was brought to the district court's attention in the motions to quash, and the burdensomeness of the requests was part of the reason why the district court, in fact, quashed some of the requests and not others. What was, I'm not deeply familiar with the district court record, was that not some of the themes that were brought to the district court's attention, and the possibility of that being a ULP by virtue of its tendency, potentially, to suppress employee activity with the union? Yes, and my read of the record is that that issue was brought up repeatedly before the district judge. Well, as I understand it, and I think I just said it was correct, there were 17 subpoena requests, 15 of them were quashed, and the other 12 were tailored as a result of discussions, and I think it's page 310 to 335 of the record, there were discussions on that subject, and the, but he didn't go far enough, I guess, is your position. I would say what was left in place was still highly coercive. It would require employees to hand over their communications that were given in confidence with coworkers and union representatives to their employer, and I think any, we have to view this from the perspective of an employee who gets a subpoena, saying United States District Court on it, and making them cough up their phone records and their emails to their employer. The district judge did allow for redaction of employees' names in some of the subpoenas, correct? Yes, but with respect to other portions of the subpoena, employees' names, including previously undisclosed names, would not be redacted, so the. Right. With regard to what requests, specifically? My recollection is that it's the requests related to ongoing organizing. And the names would not be redacted there. That's correct. I mean, it is unusual for the board to seek 10-J relief before the ALJ proceedings have begun, right? It happens both ways. It happens, it depends. In that context, you could think of the district court, well, maybe there's a need for discovery here. And I'm just grappling with the basic old abuse of discretion. Why and how was this an abuse of discretion? So could you address, the claim is that there's a nationwide chill caused by the company's activities. The company says, we don't think that's right. We want some discovery into the proposition that the chill wasn't caused by us. Is there something wrong? What's wrong with that theory of pursuing discovery? Is there something wrong with that? Well, I would say, particularly in the preliminary injunction context, the scope of the violations has to take into account the judicially noticeable facts, and good cause is the standard for expedited discovery. So it is a limited inquiry, and it should seek limited identifiable information. What this was was open-ended, and potentially could have implicated people who had expressed interest in organizing, but hadn't fully decided to be committed to the union. Did the district court make any request for a preliminary showing by Starbucks that there was any reason to believe that their chill defense had a factual basis? I looked at the record, I found one reference to one employee who, the termination date of that employee was disputed, and that was kind of it. I didn't see, but perhaps I missed something, any showing by Starbucks that the union had publicized a false narrative about its treatment of employees, or about its closing of stores, or other aspects that underlay the proceeding before the ALJ. No. Is that, was there any request for a kind of minimal showing to substantiate that there could be such a defense? No, and it is important to know, it is their burden to show that discovery, expedited discovery is warranted. They don't have access to discovery as of right. They were entitled to some discovery at some point? No, in a preliminary injunction, at this posture of the case, our position is that they have to show that their specific requests are reasonable and supported by good cause. And will your answer to this question also maybe depend on what the Supreme Court does in McKinney, in terms of whether it's the more standard 10-J standard? Under either standard, the relevance of discovery would be the same. I think the issue of irreparable harm, and balance of harms is incorporated into the just and proper standard that this court presently uses. There's no discovery dispute at issue in the McKinney case. It's on review by the Supreme Court. And as we noted in our 10-J letter. I understood the Russian discovery that occurred in McKinney, maybe no dispute, but there's discovery that occurred. It was limited discovery only to parties, and then to, it ordered some depositions of employees, but there was not the broad open-ended document requests that were marked by this case. So the problem is narrowing or not narrowing. These requests were too broad. It's not a question of Starbucks not being entitled to some discovery. Is that right? Where are we on this? I mean, I think what the non-parties have signaled their openness to was discovery that was found to be warranted by the ALJ's order in the Guest case would be acceptable to them. That's their call to make, I suppose. But I think- Well, I noticed that the ALJ in the Guest case did say, with regard to all of the requests that were still out there, that only, that removing the employee's names, full redaction of employee's names could cover all of the, it would be acceptable for all of the requests except for three, four, five, and 15. Is that right? I would have to look at the exact request to be certain of that, but my understanding is anything that would disclose their organizing strategy or their media strategy or the content of discussions. These are media strategy, basically media strategy, I think, for three, four, and five. And then for the last one, 15, that's organization strategy, and it goes to that. So, putting those aside, my understanding is that Mule said that just full reduction of the names would allow discovery for all the rest. Well, I don't think that answers the question of whether the discovery would be appropriate under the good cause standard, or- Presumably, that was what Mule was looking at, right? He was looking at, under guess, does it meet a baseline relevant standard? Is there an unlawful objective? And then the last part is, does the coercive effect of the subpoena outweigh its value to the case? Could I, oh, sorry, let me finish your answer. So, I think whether or not it's permissible in the context of a district court case is a distinct question that the ALJ did not address. So, let me ask, when I'm looking at the subpoena that went to third-party employees, you know, there are a lot of requests, and it's, I don't know how many pages long, eight pages, single-spaced document. Does the board, if I received that, I would want to hire a lawyer and figure out what my rights and duties were. Does the board have any authority to indemnify or reimburse employees who have been witnesses or who are union members for their legal fees or advice they obtain in connection with their response to a subpoena like this? And I ask this in the context of Starbucks' position that the board should have directed the non-parties to stand in contempt of court and just defy the subpoena. And, you know, I'm having difficulty understanding that. So, help me, does the board have authority to make that kind of directive or to indemnify third-parties for any losses they might suffer if they stand in contempt? As to the first point, the board has, or the board as officers have no ability to instruct parties not to comply with the subpoena. That actually would be sanctionable conduct. So, it's also the case that the board's own policies don't permit legal advice to the public. So, you mean the board would be sanctioned should it make a promise like that? No, as to the second question about indemnifying for legal fees, I think that's a remedial question that would have to be answered in the context of a particular case as to what would make employees whole for losses occurring from a violation. I'm sorry, I thought the board took a position on the non-party subpoenas and whether they were overbroad, whether they violated the National Immigrations Act or unfair practice, caused unfair practices and the like. Didn't they, isn't that part of the dialogue that went on before the district? It is, the board took that. I don't remember them saying, we'll just talk about the union subpoenas and the other ones we don't know anything about, we don't want to know anything about, we have no position on them. That wasn't the position. I think it's correct to state that the union subpoenas were discussed in the same context as the employee subpoenas with respect to overbreadth, statutory rights and so on. So, they were in effect representing the employees, the non-parties, it seems to me, de facto, maybe not formally. Well, Starbucks had actually taken the position that we had no standing to raise any objections related to relevance or burden, and that's probably a correct statement of the law, but the court found we did have standing to make objections based on the overall burdens to the case. So, but that doesn't protect the interest of the employees. I would also say that there are statutory interests that the director took particular interest in. There were also other constitutional interests, perhaps, or proprietary interests that the union or its members might have in preventing disclosure. Could you elaborate on the statutory interests that were developed before the district court? So, that arises mostly from guess and its progeny and the cases that come from it. The Supreme Court has recognized that employers can exercise intense leverage and that employees would be reticent to engage in protected activity if they knew their employer would have access to that information. In a series of cases that have been enforced by the courts, the board has found that discovery requests that seek that type of information are coercive and violate the act. And was the board in the position to have the breadth of the subpoenas and the document request tested in the contempt proceeding? Before the district court? Yes. No, the board or the director cannot order somebody to stand in contempt, as we said. We have no control over production of the documents. It's really up to them, the extent to which they choose to comply. The guest proceeding, I would also note, does not prevent them from complying. They could comply with the subpoenas and still maintain their guest case before the board. So, the idea that the board should apply extrajudicial pressure to force them to squelch its own proceedings in an irregular way to compel further compliance is not one way I... And was there discussion between the board or the general counsel, the regional director, and the district court or exchange of views and with Starbucks about lesser sanctions that might be imposed or another way of proceeding other than dismissal if one were to presume a violation of either Rule 45 or 37, I guess it's... I would say, with request of alternative sanctions, Rule 45 is really the only path that the district court had. And it's very clear what was to be done. If the district court was of the view that it needed this information to adjudicate the case, it had to hold these non-parties in contempt. With respect to Rule 37... Because Rule 45 is non-party. That's correct. Rule 45 strictly applies to non-party discovery. Rule 37 applies to parties. And for the reasons we discussed in our brief, it's not applicable here. I would also note that Rule 37 requires a finding for dismissal or for other sanctions of bad faith and willfulness, which Starbucks cannot do here. The district court made no specific finding on that point. And that is a mixed question of fact and law that's reviewed de novo. Could the district court have, for example, limited the, struck part of your pleadings on the Tenjay injunction, or limited the arguments you could make because you had, in its view, precluded Starbucks from getting information that would establish its defense? Could have done something like that. I think any Rule 37 sanctions would be inapplicable because of the nature of this being a Rule 45 subpoena.  I understand your argument about Rule 37, I think. It does say that when a party fails to obey in order to permit discovery. And if you just assume, and I'm asking you to help me out, just assume for the moment that these discovery requests, I know your argument is much to the contrary, but these discovery requests were all absolutely appropriate and that the ALJ was absolutely incorrect in saying that they were unfair labor practices. What exactly do you think that the district court should have done? If the discovery was lawful and appropriate, it should have held the non-parties in contempt and allowed them to pursue appeals to exhaust that argument before this court. And it's just without authority to, under Rule 37, to say anything about the position of the agency? I think unless the agency actually directed noncompliance or instructed the non-parties not to comply, that's the only cases where Rule 37 has been applied in the way you suggest. And I think even those cases are probably doctrinally imprecise and inherent power is actually the appropriate authority there. Thank you. Thank you. Just gonna take a moment before we proceed. May it please the court, my name is Ian Hayes for Workers United. It's an honor to be here. The union asked for this court's time to impress upon you and highlight the far-reaching and damaging effect that the tactic that Starbucks used in this case, issuing these subpoenas, has on workers' exercise of their rights under the National Labor Relations Act. If a worker is communicating with a union and or communicating with their coworkers about organizing, all of that activity is protected under the act. But if that worker then learns that those communications could be turned over to their employer, the likelihood that they're going to continue engaging in protected activity drops dramatically. So courts have recognized that dynamic and the essential relationship between workers and unions and the fact that it needs to be one. That was brought to the ALJ's, Mule's attention and didn't he determine that with respect to most of these subpoenas, just redacting the names would be sufficient to offer that protection? I, you know, I don't. Why wouldn't that be true? It's a general matter. For a few reasons, Your Honor. First of all, I'm not sure. I think if ALJ Mule said that, it would have counted as dicta because of course his conclusion was. I'm not saying it's binding or anything, whether it's dicta or not. Why is it just true? Why does it make sense? Because only the names of employees, that isn't the only piece of information. But they're the ones that would be retaliated against or that the company would seek to punish in some way. Yes, Your Honor. But an employer is able to make inferences based on other pieces of information other than just employee names about protected activity and retaliate based on that. Especially at Starbucks stores, they're relatively small shops with 20 employees. Documentation or communications that are turned over about organizing that redacts a name but still has information that allows an employer to pinpoint where organizing activity is going on. So you might have to redact the name of the store. And then you'd substitute a code so that it can be recognized in further litigation. Instead of Mr. Smith at the Buffalo store on the corner of such and such a street, it's Mr. or Witness 1A at the corner of 23rd slash A street or something, some code. And then, so you know that this happened in a store, but you don't know which store and you don't know who the person was. I think in some circumstances, Your Honor, measures like that could be taken. But what still needs to happen is an actual true balancing of a party's need for that information as opposed to the potential encroachment on workers' rights under the act. And one of the errors that the union submits happened at the district court level is that the district court didn't truly engage with the various arguments that the union and the NLRB were making about why this information was protected. So just to be clear. What are you seeking here? I should have asked that of your colleague. What are you seeking us, what do you want us to do? Well, Your Honor, the union is here in support of the NLRB and the remedies that they seek. But in addition, the union wanted to highlight the existence of case law about this protected information issue and urged the court to recognize that the way, for example, the Ninth Circuit did in the United Nurses Association case as part of any decision you make and encourage district courts to, you know, not take this issue of protected activity as the exclusive consideration. We never intended to stake out that position. But to say in a full-throated way that that consideration is a paramount one that has to be given a lot of weight. Is it your position that the district court should have quashed all the subpoenas? Yes, Your Honor. In this case, our position from the beginning, and I believe the board's position from the beginning, is that all of the requests violated the act because none of the information was necessary for a legitimate defense by Starbucks. In addition to the fact- Is Starbucks entitled to make out a defense that the union created any chill? Well, on that particular defense, Your Honor, I would say no, because there's no legal authority for that defense in the first place. However, Starbucks still had ample opportunity throughout this process to develop a record that might encourage the district court to allow discovery on that question. Because the parties, if you remember, engaged in extensive hearings just over 10-J evidence. It happened in front of the NLRB ALJ, ALJ-Rosas, but that was functionally part of the 10-J process. There were days of hearings with multiple witnesses where Starbucks was able to cross-examine the NLRB's witnesses. But there was no documents. They had no documents. The subpoenas hadn't been allowed. So you just cross-examined without any preparation. Well, I guess I would submit, Your Honor, that there's still ample opportunity to try to develop a record that supports Starbucks' defense in some way, which then could lead to document discovery. Let me crystallize a point, and just clarify to me if I'm wrong. Let's take a situation where there's a decertification effort on the part of a particular store. They want to decertify the union. And there's a debate between the sides as, oh, that's a result of unfair labor practices. They're scared now. And, you know, if they're unfair, well, let me, I'm not being very articulate. So there's a decertification motion made. And one side is saying, and this is Starbucks, they're decertifying because they're disenchanted with the union. They don't want the union. It's cost too much money. They're not getting enough benefits from the union. That's why they want it. And the LRB is saying, well, they moved to decertify because that was part of the Starbucks intimidation strategy. And they're getting them to do that in order to save their jobs. But two completely different viewpoints. And why can't that be litigated? Judge Walker, the union never said that it couldn't. In fact, that argument does come up in different contexts all the time. The issue is litigated, however, mostly through witness testimony because workers are able to testify about the reasons why they do or don't support the union. But then the cross-examination of the witness, which is really essential to getting at the truth of what the witnesses are saying, is impaired because there's no discovery. That might be true, Your Honor, but I would say under the case law that we cite in our brief on this point that the balancing test that needs to happen between the need for information versus encroachment of rights, I mean, that implicitly does impair some discovery on some points potentially. In the interest of justice, though, we would submit that in many cases, a party's need for that information does not outweigh the importance of workers exercising their rights under the law. You started your last answer to the last question by saying this particular need to inquire into the theory of union-created chill is not legally cognizable or weak, or could you expand on that a little bit? As I understand Starbucks' position, is that this goes to the just and proper inquiry because there's no need for this injunction if, in fact, it's the union that's creating the problem. Yes, that's the broad question, Your Honor. However, there's no controlling authority that says an employer can use this defense that the union somehow spun a story and created its own chill. First of all, that makes no sense from the perspective of any labor union, but putting that aside, in all of the decades that there's been 10-J jurisprudence, that defense has never been recognized under controlling authority. In fact, as the parties point out in the briefs, Starbucks raised that argument in the McKinney case, and the Sixth Circuit went out of its way to point out that there was no legal authority for that defense. But if the union fabricated terrible stories and publicized them on social media and they were patently false about how Starbucks was treating its employees, if a threshold showing like that were made, wouldn't Starbucks be entitled to have a causation defense in a 10-J proceeding? Maybe, Your Honor, but I would submit, first of all, that that threshold showing could be made without the intrusive, sweeping nature of the subpoenas in this case, and could probably be made through examination of witnesses. Second of all, I do need to point out that unions have a right under the act itself to publicize what they believe as unfair labor practices and to describe. They're falsified publications. Yes, Your Honor, and again, I think there was ample opportunity in this case and there would be in every case for an employer to make that kind of threshold showing which might then justify, on balance, delving into communication. So in your view, the district court should require some kind of threshold showing that would justify these broad requests? I believe that would be one option, Your Honor, and you were correct before in your implicit question that that did not happen in this case. I also need to point out, Your Honors, I appreciate your patience, that the union and the NLRB are entirely distinct entities. It's true that our interests are aligned in many cases, of course. Of course, we're arguing in favor of the NLRB in this case. However, to go back to some of the questions that came up earlier, the union is the party that filed all of the unfair labor practice charges, including in the original underlying case and what we're calling the guest case. That's the union's decision and nobody else's. The NLRB isn't allowed to give legal advice and it never does. And once those charges are filed, the NLRB has to investigate them and if they find merit to them, they have to prosecute. That's what Congress told the agency it needs to do. That's what happened in this case. So that conflation among the union, the subpoenaed workers, and the NLRB as sort of one massive actors is a fundamental flaw in both the district court's decision and Starbuck's position, including in its submission to this court. So I needed to make that crystal clear. If there are any other questions? Thank you very much, Your Honors. Thank you and may it please the court. Sarah Harris for Appley Starbucks. For three reasons, the district court properly sanctioned the board for using its in-house proceedings to subvert the district court's discovery order. First, the district court did not abuse its wide discretion to grant Starbuck's tailored discovery from the union and employee witnesses. With respect to redactions, redactions were allowed not only expressly by the court, but were authorized for names by the actual subpoenas themselves. So there was no risk of people's names coming out who hadn't been disclosed before. Second, the board clearly thwarted the discovery order that the district court issued. In the ALJ's words, the board used in-house proceedings as a sword to challenge the district court's order and obtained an ALJ order directing Starbuck's to drop the subpoenas to the union and witnesses in any attempts to enforce them against noncompliance. And third, dismissal as a sanction properly addressed the board's actions. The board is the one that invoked the district court's exclusive jurisdiction over 10J injunctions. The board is the one that then picked up the mantle and prosecuted in-house proceedings to try to force Starbuck's to stop enforcing the subpoenas that the district court had blessed. And the board is now replaying this move in other cases in which district courts have ordered discovery, such as in Poor versus Starbuck's. Dismissal is necessary to deter the board from continuing to usurp district court's exclusive jurisdiction. How does the, whatever the ALJ does, usurp the district court's jurisdiction? The district court has jurisdiction over these 10Js and the fact that the board is conducting administrative proceedings is separate. Unless somehow whatever an ALJ says is binding on the district court, the district court is free to reach its own decisions independently of that. Absolutely, the district court doesn't have to treat the ALJ decision as binding, but what is happening is that the board is trying to use the ALJ proceedings to force and press Starbuck's to get an order of the board that now may issue any day telling Starbuck's it must drop the subpoenas that the district court blessed. On pain of continuing to pay attorney's fees and- The district, Starbuck can refuse to do that and then whatever happens, happens. There's a contempt proceeding or something of that sort. But it's down the road because the ALJ decides that it has to go to the board and then it has to go to us for a court review before that can happen. But at this stage, nothing's before us on these cases and I don't think the board has decided on either of these actions yet. That's preliminary and the district court doesn't have to pay any attention to what the ALJ is doing. Even though your adversaries are asking for reconsideration on behalf of all of that, the district court denied them, denied reconsideration. It hasn't changed. I agree that the district court doesn't have to pay attention to what the ALJ is purporting to adjudicate, especially insofar as it's essentially taking the things that district courts are supposed to do. But what I think the district court absolutely can pay attention to is the idea that instead of complying with a discovery order of the district court, the board is then turning around and facilitating non-compliance with the district court's discovery order by saying it is going to re-adjudicate whether the discovery orders are lawful or not and then try to have proceedings in which Starbucks is sort of in an untenable position of facing escalating risks from the agency proceedings that it will be forced to drop the various subpoenas that the district court just said were fine. So I think when- Do you think that discovery requests such as the subpoenas issued here can never be unfair labor practices? I think the district court properly did consider whether they violated the NLRA confidentiality. They can be unfair labor practices on occasion, can't they? Not one that the district court approved. I think the district court is- I'm asking just a generic question. A discovery request. A discovery request could violate the NLRA. They just don't hear and the district court properly was able to say no in these situations for a couple of reasons. First of all, the confidentiality- Was the district court purporting to adjudicate whether they were an unfair labor practice or not? So the unfair labor practice is whether or not it violates the National Labor Relations Act. And yes, the argument was, there might be confidentiality interest that if you didn't respect, the act would be violated. And the district court said, I consider this. It was very careful in saying, I am considering confidentiality. For instance, at SA-24, this is the second motion for reconsideration and so the district court is summing up, I consider confidentiality interest. I consider them anew as if they were another motion to quash. And you can see the district court doing this in the record. So I understand it was considered confidentiality interest but I'm asking whether it was making its own adjudication of whether it was coercive, improperly coercive under the act. Just to clarify for me. I think it would have been because I don't think there's any possible delta between the idea that you could have a district court proceeding concluding that there is no violation of the National Labor Relations Act and then some tandem proceeding where you get to relitigate that differently. So yes, I think the district court rightly and properly concluded that the confidentiality interests were adequately protected through the many redactions. And what options were available to test the legitimacy of that conclusion? And you say in your brief that ordinarily if a party disagrees with the basis for discovery order, he or she declines to exceed and comply and then is held in contempt and can bring a challenge to the district court's finding in that regard. I don't see how that option is available to the board here where there were non-parties who were subject to the orders. You seem to say that the board had a way to direct those non-parties to comply, but how is that within the board's authority? I think, so two things. First of all, the fact that the non-parties could have not complied and litigated this up, at least with respect to why the mandamus order that this court issued denied that.  to happen here and absolutely would have litigated this. I was on that panel and it was suggested that reconsideration and other approaches might be possible. The subsequent litigation has made me think again about whether that was correct given the disjunction between the board's authority and the breadth of the subpoenas that were issued to non-parties, to former employees, employees, union members,  Because I don't see how if you were an employee who got this eight page subpoena or whatever, that you would want to get legal counsel immediately and you wouldn't be going to the union or the board for that. So just to be very clear, the witnesses are all represented by the union. That was clear in the district court record. Not only that, it was clear in the district court record. The district court said, I understand if you think there are any burdens, especially on the individual witnesses, come back to me. I am willing to work with you. If it's easier to produce some of these records, please do so. And instead of producing anything, the district court expressed surprise that none of that had happened. The district court offered a privilege log. Both Starbucks and the district court said we would be happy to have a protective order for names. And so it's really, I think- Thank you for clarifying that. But still, the board couldn't have directed the union to direct the employees who was represented to fail to comply. Is that right? To attempt to- I don't think that would have had to have been happening for the board to litigate this up. I think the board just has to do something to indicate that it is failing to obey the order. So the board could have just said, we think this is unlawful. We're not directing you not to comply, but we think the order is unlawful. Anything that would trigger the ability to litigate up a contempt sanction from the district court would have done it. And again, I think the fact that both the union had options for doing so and the board had options for doing so suggests whatever the mechanism of litigating the propriety of the discovery order should be, it should not be turning around and then having the union initiate and the board prosecute proceedings to declare the very subpoenas that the district court thought were unlawful. The union and the board are aligned in many respects here, but they are not the same, correct? Of course not, but what- If the union files a ULP, the board has the statutory responsibility to assess and determine whether to proceed, right? And the board has absolute discretion whether to pursue those charges, and that actually is why the board's conduct in this situation is troubling. The board is the one that went hat in hand to the district court to say we want an extraordinary nationwide injunction against Starbucks with respect to various practices throughout the country on the theory that Starbucks conduct is causing a chill of nationwide unionization. And so instead of letting the district court do its job and exercising its exclusive jurisdiction, the board, when it didn't like the discovery order, said we're exercising our discretion to prosecute and just going forward with these unfair labor practice charges, even though the district court was the one that was tasked with figuring out whether the subpoenas were lawful. And so that is the kind of culpable conduct that the district court rightly, I think, had a very big problem with and thought the dismissal was the appropriate sanction. And only if the board is sanctioned. I don't think sanctioning the union would have been a reasonable alternative remedy here. Rule 45 governs non-party compliance, right? Rule 30, I think rule 37 in equity is the relevant thing here, because the non-compliance here is the board's facilitation of non-compliance. So rule 37 and. How did it facilitate non-compliance? It facilitated non-compliance by pursuing an order before the ALJ that the board can now impose that says Starbucks must drop the subpoena request. So the exercise of statutory authority, the exercise of discretion pursuant to a statutory authority to respond to a ULP charge filed by a union was sanctionable conduct. It's absolutely sanctionable conduct when you are trying to wrest away the exclusive jurisdiction of a district court to decide whether something violates the National Labor Relations Act and saying in-house, I'm going to decide what discovery my adversary is entitled to. I did not like what the district court said. And I am now going to take it in-house to try to get a different answer. So yes, I think the district court did not abuse of discretion in thinking that was a willful attempt to facilitate non-compliance with its order. Can I shift gears just for a second? What exactly is the defense that you're proposing here? And what is the cause for the discovery? So the argument is with respect to the irreparable harm prong of the injunction inquiry. The claim on the other side is that Starbucks conduct in the Buffalo stores created a fear of retaliation that allegedly chilled unionization efforts nationwide. So Starbucks is saying, I think rightly, that there is a defense to say, no, this chill in any chill in unionization efforts had other causes. People might not have liked paying union fees. People might not have liked union representatives. They just don't want to be represented by the union. And we're in a situation where it's not just sort of looking at this in a vacuum. We're in a situation where the board was able to adduce evidence on this score before the board's ALJ, who was purporting to take evidence about irreparable harm, despite the fact that that is not within the board's powers. And Starbucks had no opportunity to test that evidence. And one great example of this is the five emails that the board was looking at in the ALJ proceedings from the Workers United account that were purporting to show a chill. Sorry, from what account? The Workers United email account. It's cited at pages 68 and 69 of the board's brief. And so Starbucks said, look, we should be able to test what the, if you want to produce these emails, which, by the way, did not have any redactions, disclose people's names and their email accounts and their store locations. If you're going to produce these five emails, Starbucks should at least get to test, like, what did the other email say? You've introduced this body of evidence, and Starbucks should be able to test, what did the other email say? Do they perhaps say very different factors are deterring people from wanting to unionize that the union was asked to sort of help address? Would it have been reasonable for the district court to say, listen, I understand you want to make this defense. It sounds like it could be a plausible defense, though it doesn't have a long pedigree. But give me some instances, some factual instances, in which the union has misrepresented or employees have misrepresented what Starbucks has done. And make that threshold showing, and then I'll let you proceed to look broadly for more. So two responses, and respectfully, no. The answer is no. First of all, the argument is not that there is some sort of misconduct or a threshold  It is, you have introduced a theory, and you have now used the ALJ proceedings to supply evidence. That Starbucks is not allowed to test with respect to other factors causing a Chilean unionization. So when one party introduces evidence, the other party is supposed to get to test that. And then second of all, if you need evidence, the Overstreet proceedings from Phoenix against Starbucks, I think, are the best example. Not only that non-party discovery happens in 10J proceedings, but why it can matter so much. But my concern is, I mean, you've accused the board of having a kind of playbook in which it's going to go forward with seeking 10Js and kind of protesting readily across the nation. But they have raised the concern also that Starbucks could undercut the statutory and administrative proceedings that have ALJs finding ULPs, and then the director going forward and seeking relief to prevent further unlawful action. That you can slow that down dramatically by yourselves issuing broad subpoenas of the nature that we have seen here. And to be able to do that and enforce that kind of action that the board has characterized as potentially coercive and an unfair labor practice would eliminate the board's ability to get a 10J injunction, which they're entitled to under the statute. What's your response to that concern? We respectfully and strenuously disagree with that concern for a couple of reasons. First of all, it is not the case that discovery or non-party discovery is anomalous. It's not the case that only Starbucks is pursuing it. I think the best evidence of that is that the board's own manual acknowledges the discovery and 10J proceedings, especially from employer requests and especially on irreparable harm, is not uncommon. And I don't think it's the case that you can brand any effort to seek discovery when the board itself is opening the door to bodies of evidence as an unfair labor practice. And again, I think district courts do their jobs in these cases and say, I am applying the wide discretion I have under the federal rules to make sure that confidentiality interests are protected and to make sure on the countervailing consideration that any employer, not just Starbucks, is able to get a fair shake and test if one side is presenting evidence, if one side is presenting allegations. You cannot have a situation where you cannot test whether that is truly irreparable harm. District courts can abuse their discretion by issuing overbroad discovery requests or discovery orders that pursue tangential theories. And what I'm hearing you say now is that, well, they introduced evidence that our client had engaged in misconduct, and we're entitled to attest that evidence. In a preliminary proceeding, that seems to me a recipe for it's not going to be so preliminary anymore. It's full discovery. So you could help me out a lot if you focused precisely why this was so more specifically than this went to irreparable harm, and I thought I might come up with something. Sure, and so absolutely, I think in this situation, it's only expedited discovery. It is not going to be a sort of mini trial in every situation. But the discovery requests, again, and even the ALJ thought some should go forward, are very nearly tailored to the idea, if you are seeking a nationwide injunction and the irreparable harm is your claiming, that Starbucks or any other employer chilled unionization efforts nationwide. That's your theory, and you try to back that with certain pools of evidence, or you put on certain witnesses to try to say that that is happening. The other side should get to test that. And again, I think district courts rightly have discretion to figure out, what do I need to have to test this? The district court here was not saying, I want a full trial, I want a full mini trial, and any of this. The district court was saying, we don't even know how many documents there are, because there is no attempt to comply with production. And that the court seemed very willing to say, in the discovery hearings, start producing. We can talk and keep tailoring this sort of process further if there are real burdens. I mean, again, the fact that the court allowed 12 of the subpoenas and quashed 15 strongly suggests, and the record bears out, that there really was an effort here to say, all I care about as the district court is, what is the evidence of this supposed chill and unionization efforts? If that is your theory, and you want a nationwide injunction on that thesis, it has to be tested, especially when you yourself, the board, have been introducing evidence on that discovery hearing. I'm just understanding from my reading of the briefs, I thought your theory was specifically about the union created the chill, not us. But are you now saying, no, no, we just are saying there was not irreparable harm, those emails might have shown a variety of things, that the union created the chill, that people weren't interested in unions, that the dues would be too high, all sorts of things. To be very clear, our theory, both in the briefs and now, is that we are just disproving the notion that Starbucks was the sole cause of this alleged chill. So some of it is, to the extent the union has introduced talking points to people, asking them to play up particular incidents that might not otherwise have been played up, that is relevant to whether the chill is from Starbucks or something else. But also, if you look at the record, there's mentions of union fees and other things as explanations for why the union is not supported. And so again, even the ALJ opinion on whether the subpoenas were lawful recognize that virtually all of these requests did bear on the idea of whether Starbucks was causing a chill in nationwide unionization efforts. The real delta between even the ALJ and the district court was just, are you applying the federal rules of civil procedure or not? And how much tailoring the district court actually did of these requests. And again, I think they are very, very, very carefully kept in to say, there's confidentiality protections. There's redactions. The burden is getting minimized. The court left open the door to, if you start producing and the burden is too great, we can adjust the schedule. But at the end of the day, the court said, look, you're facing a nationwide injunction. You have to be able to defend yourself, Starbucks. And that's what this was all about. Can I also just ask, this was up here before, but back down. I think this court said, in effect, we now have an ALJ record on the allegations of unfair labor practice that may change. The district court may take that into consideration. How did the district court take that into consideration? The district court rightly separated out the unfair labor practice allegations and the need for discovery there, which is not allowed, versus the need for discovery just tailored to the irreparable harm issue. So the court said, yes, of course, respecting the Second Circuit saying, you might want to take another look, see if the ALJ opinion affects that. But said, nope, because I'm laser focused on the irreparable harm aspect, it doesn't obviate the need for the subpoena. Thank you. We ask for reference. Reference? I'll try to be brief. I want to address, with respect to the ability to test assertions, discovery in preliminary injunction proceedings is supposed to be limited. It's not the sun, the moon, and the stars. It's supposed to seek limited, specific, identifiable information. Did the district judge take that into account, though, often looking at burden, which would delay the discovery, and decided not to allow that particular discovery, and bearing in mind and quashing a number of those, 15 of the subpoenas? Wasn't that, it's not like the district court was not mindful of the concerns you just raised. I don't think that's the case. There's nothing, either in the transcript or in the written orders, that would suggest that he considered the standards for expedited discovery. Instead, it would actually suggest that he applied the standards for traditional discovery. He repeatedly cites Rule 26. So the other thing I would say, as to the purported defense here, there's no evidence of any improper conduct by the union, despite having days of testimony where they could have tried to elicit that information, none appeared. So there's no basis to support that defense. They also seem to be running away from their argument that the union caused the chill here, and now seem to be opening up to a more general idea that there may have just been some other unexplained factors. In terms of the equitable argument in favor of the court having this power, for the reasons laid out in our brief, equity follows the law. The regional director pursued this charge pursuant to the act. Section 3D of the act gives the general counsel discretion. And discretion wouldn't mean much if it were subject to the review of a court to deny a remedy based on factors that weren't before it. As to the nationwide scope, I would say the court could have decided the issue about the stores. It could have limited the scope of its injunction, or it could have deferred for further proceedings than the nationwide scope. And that's repeatedly happened here where courts have limited 10 J's where a nationwide remedy was sought to the stores. I would also note that the purported defense here doesn't address the issue that this circuit's decisions say that 10 J has to take into account the context of labor law and further the policies of the act. To clarify, in your view from the board's position, was there any sanction short of dismissal that would have made a difference here? District Court obviously became kind of frustrated. But if we accept the proposition that the board was in position to facilitate compliance in some ways and have responsibility for the absence of compliance with the discovery request that the district court had tailored, was there anything else other than dismissal that the court could have done? Contempt under Rule 45 was the course, Your Honor. Contempt on the non-party compliance. That's it, Your Honor. That's it. If there are no more questions. Thank you all. Very helpful. We'll take the matter under advisement.